# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TRAFFIC TECH, INC., a corporation, and NICKOLAS J. DUGGER, an individual,<br><br>    Defendants. | State Case No. 2021CVH1035 |

## NOTICE OF REMOVAL

Defendants Traffic Tech, Inc. ("Traffic Tech") and Nickolas J. Dugger, by and through their undersigned counsel, hereby remove the above-captioned civil action from the Court of Common Pleas for Clermont County, Ohio, to the United States District Court for the Southern District of Ohio, Western Division pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  As grounds for removal, Defendants state the following:

## BACKGROUND

1. Plaintiff Total Quality Logistics, LLC ("TQL") filed its Verified Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief, as well as a Motion for a Temporary Restraining Order and Preliminary Injunction, in the Court of Common Pleas for Clermont County, Ohio, on November 8, 2021.

2. In the Complaint, TQL alleges that Dugger violated a Confidentiality Agreement and Restrictive Covenant by accepting employment with Defendant Traffic Tech and by allegedly soliciting TQL's customers.  TQL also alleges that, by hiring

Dugger, Traffic Tech violated a March 2016 settlement agreement it previously entered into with TQL. In the Complaint, TQL alleges: (1) breach of contract against Dugger; (2) misappropriation of trade secrets against Dugger; (3) breach of contract against Traffic Tech; and (4) tortious interference with contract against Traffic Tech.

3. On the same day it filed its Complaint, TQL also filed a motion for a temporary restraining order against Dugger and Traffic Tech. This motion was still pending at the time of Removal.

## BASIS FOR REMOVAL

4. This action is removable pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.

5. Removal to this Court is proper under 28 U.S.C. §§ 1441(a) and 1446(a) because this Court is the United States District Court for the district and division corresponding to the place where the state-court action was pending.

6. The United States District Court for the Southern District of Ohio has subject-matter jurisdiction over the action based on the diversity of the parties and the amount in controversy pursuant to 28 U.S.C. § 1332.

7. The United States District Court for the Southern District of Ohio has subject-matter jurisdiction over the action based on claims "arising under the Constitution, laws, or treaties of the United States," pursuant to 28 U.S.C. § 1331.

8. Traffic Tech has timely removed this action pursuant to 28 U.S.C. § 1446(b)(1). "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."

*Id.* Defendant Traffic Tech was served on November 8, 2021. This notice of removal is filed within 30 days of November 8, 2021.

## BASIS FOR DIVERSITY JURISDICTION

9. For a Federal Court to have diversity jurisdiction, the civil action must be between citizens of different states and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a).

### *Diversity of Citizenship*

10. Dugger is a citizen of Florida.

11. Traffic Tech is incorporated in California and its principal place of business is in Illinois.

12. TQL is an Ohio limited liability company. A limited liability company is a citizen of any state of which a member of the company is a citizen. Upon information and belief and publicly-available information, each of TQL's members are citizens of Ohio.

13. Thus, there is complete diversity between Plaintiff and Defendants. *See* 28 U.S.C. §§ 1332, 1441(b).

### *Amount in Controversy*

14. The removing party bears the burden of proving "by a preponderance of the evidence that the amount in controversy" exceeds $75,000. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). This requirement "does not place upon the defendant the daunting burden of proving, to a legal certainty" that the jurisdictional amount is satisfied. *Id.* (citation omitted). Rather, the Court must remand only if it appears "to a legal certainty" that the amount is not satisfied. *Basicomputer Corp. v. Scott*, 973 F.2d

507, 510 (6th Cir. 1992). In sum, the defendant must show that it is "more likely than not" that the amount in controversy exceeds $75,000. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000). To that end, "[a] complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses." *Basicomputer*, 973 F.2d at 510 (finding amount in controversy requirement was met in non-compete dispute where "each of the defendants generated sales worth well over $100,000 per year while they worked for [plaintiff]").

15. A notice of removal may assert the amount in controversy if state practices do not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. *See* 28 U.S.C. § 1446(c)(2)(A)(ii). A notice of removal may also assert the amount in controversy if the initial pleading seeks nonmonetary relief. *See* 28 U.S.C. § 1446(c)(2)(A)(i).

16. Here, the Ohio Rules of Civil Procedure preclude TQL from stating the specific amount it seeks to recover. *See* Ohio R. Civ. P. 8(a) (stating that the party "shall not specify in the demand for judgment the amount of recovery sought"). Additionally, TQL seeks nonmonetary relief in its initial pleading. (*See* Compl. at 10, ¶¶ a–b.) (seeking "immediate, preliminary, and permanent injunctive relief" against Dugger and Traffic Tech). As such, Defendants can rightfully assert the amount in controversy in this Notice of Removal.

17. TQL seeks compensatory damages of at least $25,000 against Dugger and Traffic Tech each. (*See* Compl. 10, ¶ c (seeking compensatory damages in "excess of $25,000"); *Id.* at ¶¶ 29 (claiming damages against Dugger that "exceed the jurisdictional

4

minimum of this Court"); *Id*. at ¶¶ 46, 55 (claiming damages against Traffic Tech that "exceed the jurisdictional minimum of this Court"). In addition to compensatory damages, TQL seeks punitive damages, court costs, prejudgment interest, and post-judgment interest. (*See* Compl. at pg. 10, ¶ d–f.). Although Defendants deny that TQL is entitled to any monetary judgment, Defendants assert that total monetary damages, considering the $25,000 in compensatory damages, court costs, prejudgment interest, and post-judgment interests that TQL seeks, is approximately **$30,000** against Dugger and **$30,000** against Traffic Tech.

18. TQL also seeks "immediate, preliminary, and permanent injunctive relief" against both Dugger and Traffic Tech. (*See* Compl. 10, ¶¶ a–b.) TQL seeks enforcement of both Dugger's non-compete agreement and the terms of a 2016 Settlement Agreement between TQL and Traffic Tech. Together, TQL seeks an injunction that would do the following:

(1) Prohibit Dugger from contacting, soliciting, or accepting business form, rendering any services to, giving assistance to, or accepting any compensation from any Customer[1] or Customer Prospect[2] of TQL;

---

[1] "Customer" is defined as "any individual, business, or other entity, for whom TQL has rendered any service, or with respect to which TQL has planned and/or made contact for the purpose of rendering any service, within the twenty-four (24) months immediately preceding the termination or cessation of Employee's employment."

[2] "Customer prospect" is defined as "any business, company, individual, partnership, or entity, including former Customers, with which TQL or any of its employees, including but not limited to the Employee, had contact for the purpose of soliciting business, developing a business relationships, or discussing existing or potential services of TQL within the twelve (12) months immediately preceding the Employee's termination or cessation of employment."

(2) Prohibit Dugger from entering into, participating, consulting with, or engaging in, any business in competition with the Business of TQL;

(3) Prohibit Traffic Tech from knowingly soliciting, hiring, or employing any current or former TQL employee during the duration of any non-compete agreement the employee has with TQL, regardless of how the former TQL employee's employment with TQL ended; and

(4) Prohibit Traffic Tech from filing any lawsuits or complaints in any court or tribunal challenging the validity of any TQL non-compete agreements TQL has with any of its current or former employees.

19. The value of injunctive relief for purposes of calculating the amount in controversy "is equivalent to the value to plaintiff of conducting his business or personal affairs free from the activity sought to be enjoined." *Basicomputer Corp. v. Scott*, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991), *aff'd*, 973 F.2d 507 (6th Cir. 1992). "Thus, in a suit brought by an employer against a former employee to enforce a covenant not to compete, the court usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination." *Id.* (citation omitted). In addition, the Court may also examine "the value of the plaintiff's lost revenue, the value of the future effect of a defendant's breach upon all of the plaintiff's other contracts with its sales agents, and the value of trade secrets and confidential information acquired by the defendants during their employment." *Id.* Prior to leaving TQL, Dugger had generated $1,000,000 in revenue for TQL in calendar year 2021, and $225,000 in gross profit. He was on track to generate a total of $350,000 in gross profit for TQL by year-end. (*See* Dugger Decl. ¶ 3.) TQL seeks injunctive relief that would restrict Dugger and Traffic Tech from doing business with *any* of the customers that Dugger sold to at TQL in 2021.

Thus, the value of the injunctive relief sought by TQL against Dugger—enforcement of the restrictive covenant—is over $1,000,000 in revenue and **$350,000 in gross profit**.[3]

20. If the settlement agreement is enforced against Traffic Tech *in the manner in which TQL interprets it*, Traffic Tech would be enjoined from hiring any former TQL employee subject to a non-compete agreement regardless of the reasonableness of such agreement—*forever*. Such an injunction provides value to TQL by preserving TQL's costs to replace departing employees, train the replacements, and preventing lost revenue due to an employee's departure. *C.f. OmniMax Int'l, Inc. v. Dowd*, CV N16C-04-168-WCC, 2019 WL 3545848, at *4 (Del. Super. Ct. July 17, 2019) (recognizing replacement costs, training, and lost revenue factors into damages in related context of a breach of employee non-solicitation provision); *Swisher Hygiene Franchise Corp. v. Clawson*, CV-15-01331-PHX-DJH, 2020 WL 2512788, at *6 (D. Ariz. May 14, 2020) (same); *Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 392 (D. Md. 2015) (same); *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 214 (Ind. 2019) (same); *Zywave, Inc. v. Cates*, 4:18-CV-751-ALM-KPJ, 2020 WL 1182286, at *1 (E.D. Tex. Feb. 21, 2020) (same). TQL claims that it provides its new employees with "extensive training." (*See* Compl. at ¶ 15.) While Defendants dispute the value (and legality) of TQL's training program, *see e.g., Hendricks v. Total Quality Logistics, LLC*, 1:10CV649, 2019 WL 2387206, at *2 (S.D.

---

[3] Additionally, TQL's requested injunctive relief goes beyond just the customers that Dugger serviced while employed at TQL. By its terms, the restrictive covenant prevents Dugger from servicing all of TQL's customers and prospective customers, regardless of whether Dugger actually communicated with those customers on behalf of TQL. According to public information, TQL generated over $4B in gross revenue and over $737M in net revenue last year. Thus, the value of this injunctive relief is surely above $75,000.

Ohio Mar. 22, 2019) (declining TQL's motion for decertification in class action claim based on TQL's failure to pay overtime wages to its trainees during its alleged training), an injunction that prevents TQL employees from leaving provides a competitive advantage to TQL and certainly contributes to the amount-in-controversy for jurisdictional purposes. *See Basicomputer*, 973 F.2d at 510 ("A complaint may reach the jurisdictional amount by including claims for losses that are difficult to quantify, such as competitive losses.").

21. TQL also seeks attorney's fees provided for in the agreement between Dugger and TQL. (*See* Compl. at 10, ¶¶ a, e.) Although the amount in controversy is determined "at the time of removal," *see Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007), this Court looks to the "possible attorney's fees" that may be incurred throughout the litigation. *Mencer v. Kraft Foods Glob., Inc.*, 695 F. Supp. 2d 667, 679 (S.D. Ohio 2010); *Davis v. Kindred Nursing Centers E., L.L.C.*, No. 2:05-CV-1128, 2006 WL 508802, at *2 (S.D. Ohio Mar. 2, 2006) (same); *see also Karl v. Bizar*, No. CIV.A. 2:09-CV-34, 2009 WL 2175981, at *5 (S.D. Ohio July 21, 2009) (calculating attorney's fees in an amount-in-controversy analysis by looking to the amount of attorney's fees that would be spent for "minimal discovery"). Based on prior experience, Defendants estimate that TQL would expend approximately **$200,000** in attorney's fees to fully litigate this case through trial, including a motion for a TRO, a preliminary injunction, discovery, summary judgment, and, ultimately, a trial.

22. Altogether, TQL's claimed monetary relief ($30,000), injunctive relief (at least $350,000), and projected attorney's fees ($200,000), Defendants hereby assert,

8

pursuant to 28 U.S.C. § 1446(c)(2)(A), that the total amount in controversy for TQL's claims against Dugger is at least **$580,000**, which is above the jurisdictional amount.

23. As for TQL's claims against Traffic Tech, TQL's claimed monetary relief ($30,000), injunctive relief against Traffic Tech (exact amount unknown, but certainly in excess of $75,000) and projected attorney's fees ($200,000), Defendants hereby assert, pursuant to 28 U.S.C. § 1446(c)(2)(A), that the total amount in controversy for TQL's claims against Traffic Tech is at least **$305,000**, which is above the jurisdictional amount.

## BASIS FOR "ARISING UNDER" JURISIDICTION

24. A Federal Court also has jurisdiction when the civil action includes "a claim arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1441(c). When a claim based on state law implicates "significant federal issues," the Federal Court has jurisdiction. *See also Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.").

25. Here, TQL asserts that Traffic Tech has breached a 2016 Settlement Agreement with a no-hire provision wherein Traffic Tech is purportedly restricted, indefinitely, from hiring TQL employees that are subject to post-employment non-competition restrictions. Defendants contend that this provision (as interpreted by TQL) is illegal and unenforceable under the Federal Sherman Act. *See* 15 U.S.C. § 1 (deeming

illegal "every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States or with foreign nations").

26. In order for TQL's claims against Traffic Tech to succeed, it must establish that the no-hire provision is not unlawful under the Federal Sherman Act. Upon information and belief, TQL disputes that this provision is illegal under the Sherman Act. Whether this settlement agreement is enforceable **as TQL interprets it** is of substantial federal interest. *See Hunter v. Booz Allen Hamilton, Inc.*, 418 F. Supp. 3d 214, 223 (S.D. Ohio 2019) (allowing complaint alleging that no-poach agreement violated Sherman Act to survive motion to dismiss). Finally, the Court's exercise of jurisdiction here would not disturb the federal-state division of labor under 28 U.S.C. § 1331. Thus, this Court has jurisdiction pursuant to 28 U.S.C. § 1441(c).

## OTHER PROCEDURAL MATTERS

27. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders in the state-court action are filed with this Notice as **Exhibit A**.

28. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal will promptly be filed with the Clerk of the Court of Common Pleas for Clermont County, Ohio, and will be promptly served on Plaintiff's counsel.

29. Promptly after removal, Counsel for Traffic Tech will move this Court to appear *pro hac vice*, pursuant to Local Rule 83.3(e).

30. The requirements for removal under 28 U.S.C. §§ 1332, 1441, and 1446 have been met. If any questions arise as to the propriety of the removal of this action, Traffic

Tech requests the opportunity to brief this matter and provide further evidence as necessary to support their position that the case is removable.

31. By removing this action to this Court, Traffic Tech does not waive any defenses that are available to it under applicable law.

November 16, 2021

/s/ Sam Orbovich
Sam Orbovich (#0011903)
Pamela Abbate-Dattilo
(*Pro Hac Vice* Forthcoming)
Lukas S. Boehning
(*Pro Hac Vice* Forthcoming)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN  55402-1425
(612) 492-7000
sorbovich@fredlaw.com
pabbatedattilo@fredlaw.com
lboehning@fredlaw.com

**Attorneys for Defendant Traffic Tech, Inc.**

November 16, 2021          Respectfully submitted,

/s/ Robin Miller
Robin Miller (#0074375)

STITES & HARBISON, PLLC
5325 Deerfield Blvd.
Mason, Ohio 45040
513-445-6597
rmiller@stites.com

***Attorney for Defendant Nickolas Dugger***