UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, | : | Case No. 1:21-cv-714 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| TRAFFIC TECH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL ARBITRATION
(Doc. 22)**

This civil case is before the Court on Plaintiff's motion (Doc. 22) to compel arbitration on the question of whether TQL committed improper pay practices and the parties' responsive memoranda (Docs. 28 and 29).

**I. BACKGROUND**

Plaintiff Total Quality Logistics, LLC ("TQL") is an Ohio limited liability company. (Doc. 3 at ¶2). TQL provides third-party logistics services to customers across the continental United States. (*Id.*). Defendant Traffic Tech Inc. ("Traffic Tech") is an Illinois limited liability corporation in the same industry. (*Id.* at ¶3).

Defendant Nickolas Dugger is a former employee of TQL. (*Id.* at ¶¶4). Dugger worked for TQL in Florida from January 6, 2020 to September 24, 2021 in the positions of Logistics Account Executive Trainee and Logistics Account Executive. (*Id.* at ¶¶ 4, 14).

Dugger signed TQL's non-compete agreement. Specifically, he agreed, for a period of a year after leaving TQL, to neither work for a competitor nor solicit clients of TQL. (*See* "Confidentiality Agreement and Restrictive Covenant," Doc. 3-1, hereafter, "the non-compete"). Dugger also signed a dispute resolution and arbitration agreement ("DRA") (Doc. 22-1). In the DRA, both Dugger and TQL agreed to let the other submit "any and all legal claims" to arbitration. (*Id.* at PageID# 352). The DRA states that "[l]egal claims shall include any and all of the Parties' rights, causes of action, or claims against or between one another that arise out of or in any way relate to Employee's employment with Employer, unless otherwise excluded in this [DRA]." (*Id.* at PageID# 353). The exclusions are explicitly set forth in section 1.B of the DRA. There, the DRA states that "legal claims" do not include "claims for a declaratory judgment, injunctive relief, or any other causes of action relating in any way to the Employee [non-compete]." (*Id.*).

Dugger left TQL and joined Traffic Tech. (*See* Dugger Declaration, Doc. 7-1). His largest client at TQL, United Pipe, one way or another, became his largest client at Traffic Tech. (*Id.* at ¶21). After discovering Dugger's employment with Traffic Tech, TQL moved for a temporary restraining order ("TRO") and a preliminary injunction in state court. (Doc. 4). Defendants removed to federal court. (Doc. 1). The Court held a conference and ordered the parties to submit further briefing on the request for a TRO.

In the TRO briefing, TQL argued Dugger had violated his reasonable non-compete, and had, or inevitably would, disclose trade secrets. (Docs. 4 and 13). TQL also argued for injunctive relief based on a tortious interference claim. (Doc. 4 at

2

PageID# 156). Both Dugger and Traffic Tech raised issues with the reasonableness of the non-compete. (Docs. 7 and 8). Individually, Dugger put forth an unclean hands defense. (Doc. 7). Dugger specifically contended that TQL had misclassified him and underpaid him in violation of the FLSA. (*Id.* at PageID# 172). Dugger argued that, without clean hands of its own, TQL could not avail itself of this Court's equitable powers to enter injunctive relief. (*Id.*).

Responding to this unclean hands argument, TQL made two discrete rebuttals. First, TQL argued state law did not permit an unclean hands defense where the underlying claim—in TQL's mind, an FLSA lawsuit—could be asserted in its own case for damages. (Doc. 13 at PageID# 245). Second, TQL argued that Dugger simply had not established the necessary elements of the unclean hands defense. (*Id.*).

The Court entered a limited TRO. (Doc. 15). The TRO restricts Dugger from working with United Pipe and other former customers he serviced at TQL. (*Id.*). But the TRO does not enjoin him from his employment with Traffic Tech generally. (*Id.* at 23). On the other hand, the Court found that TQL had not demonstrated a likelihood of success on its trade secret and tortious interference claims. (*Id.*).

The Court also made preliminary determinations on the question of the unclean hands defense to injunctive relief. (*Id.* at 20). First, Dugger could at least *attempt* to show TQL's unclean hands. (*Id.* at 21). Because TQL sought this Court's powers under Rule 65 of the Federal Rules of Civil Procedure, TQL could not summarily foreclose an "unclean hands" defense based on state law. (*Id.* at 22 (citing *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)). Second, the Court found that Dugger had as

3

of yet failed to establish TQL's unclean hands based on the rigorous standard for meeting that defense. (Doc. 15 at 22).

After the Court entered the TRO, the parties entered expedited discovery ahead of briefing on the preliminary injunction. They quickly came to an impasse. Among other disputes, as is most relevant here, Dugger had propounded discovery seeking information related to his unclean hands defense. Those requests sought documents pertaining to misclassification of Dugger as a trainee. TQL objected that these discovery requests were irrelevant and that they sought "sensitive" or "confidential" information.[1] The Court scheduled an informal discovery conference for January 18, 2022, wherein the parties spoke to their respective positions.

In a written Order dated January 21, 2022, the Court significantly limited discovery on the unclean hands issue but allowed Dugger to go forward with some unclean hands requests, as pruned by the Court. (Doc. 21). The parties quickly apprised the Court of further discovery disputes. On January 27, 2022, the Court set another conference for January 31, 2022. In the intervening period, on January 28, 2022, TQL filed the present motion to compel arbitration and for a stay. (Doc. 22).

Importantly, the motion to compel arbitration seeks to send a narrow part of the conflict to arbitration. (*Id.*) As TQL characterizes it, the issue of "improper pay practices" ought to go to arbitration while the parties move forward on the preliminary injunction before this Court. Of course, by seeking to arbitrate "improper pay practices,"

---

[1] These arguments were made in non-record letter statements sent to the Court ahead of an informal discovery conference.

4

TQL's motion effectively seeks to end this Court's consideration of Dugger's unclean hands defense to the preliminary injunction. This is because Dugger's unclean hands defense to the injunction is premised on the notion that TQL misclassified and underpaid him.

## II. STANDARD OF REVIEW

"Under the Federal Arbitration Act, 9 U.S.C. § 2, a written agreement to arbitrate disputes which arise[ ] out of a contract involving transactions in interstate commerce … 'shall be valid, irrevocable and enforceable'" save any reason in law or equity to the contrary. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). A strong presumption in favor of arbitration applies but only if the parties have a valid agreement to arbitrate. "When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995).

The FAA generally applies to employment contracts with arbitration provisions. *McGee v. Armstrong*, 941 F.3d 859, 865 (6th Cir. 2019) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)). When considering a motion to compel arbitration, a court has four tasks:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

5

*Stout*, 228 F.3d at 714 (6th Cir. 2000) (internal citations omitted). However, on the second task, the Court also may need to resolve who, the court or an arbitrator, is responsible for determining whether the scope of the agreement "covers a particular controversy," or, in other words, which of those two is responsible for determining "arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 589 U.S. --, 139 S. Ct. 524, 527, 529 (2019).

### III. ANALYSIS

It is not contested that Dugger signed the DRA. The Court will thus presume there is a valid agreement to arbitrate and move on to the question of its scope.

### A. Scope of the DRA

The scope of the DRA as applied to the current dispute hinges on the DRA's definition of "legal claims." (Doc. 22-1). The DRA subjects all non-exempted "legal claims" to arbitration. (*Id.* at PageID# 352). Again, the DRA defines "legal claims," in turn, as "any and all of the Parties' rights, causes of action, claims against or between one another that arise out of or in any way relate to Employee's employment with Employer, unless otherwise excluded in this Agreement." (*Id.*).

TQL argues that a "claim" can be a "defense"—so long as both are factually premised on "improper pay practices." (*See e.g.*, Doc. 22 at PageID# 343). TQL essentially concludes that allegations regarding improper pay practices must go to arbitration whether packaged as an "equitable defense" or a "legal claim." (*Id.*). Dugger argues the contract says nothing about an equitable, unclean hands defense, so such

6

defenses are simply not within the scope of the DRA.

Contract interpretation is a question of law for determination by the Court. *Textileather Corp. v. GenCorp Inc.*, 697 F.3d 378, 382 (6th Cir. 2012). In Ohio, "a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Id.* [2] Terms take their common meanings unless another meaning is evidenced. *Id.* With these principles in mind, the Court turns to the DRA.

The DRA subjects "legal claims" to arbitration. The DRA's provided definition of "Legal Claims" is circular—legal claims are "any and all of the parties' rights, causes of action or claims." The definition does not illuminate whether an equitable defense based on improper pay practices belongs to the listed categories. The terms put forth in the definition—"rights, causes of action or claims"—are also inconclusive.[3] Thus, the Court proceeds to "look[] at the contract as whole to see if one clear meaning best fits the context." *See Dominish v. Nationwide Ins. Co.*, 129 Ohio St.3d 466, 953 N.E.2d 820, 822

---

[2] The parties engage in no choice-of-law analysis, but the DRA clearly indicates it should be interpreted according to Ohio law. (Doc. 22-1, PageID# 354). Accordingly, the Court looks to cases interpreting Ohio law for guidance.

[3] "Right" is the "most ambiguous" term in legal discourse, probably here meaning something along the lines of "something that is due to a person by just claim, legal guarantee, or moral principle." RIGHT, Black's Law Dictionary (11th ed. 2019). A cause of action usually implies the capacity to bring a suit and would not seem to encompass an equitable defense to injunctive relief. CAUSE OF ACTION, Black's Law Dictionary (11th ed. 2019). That leaves "claim." A "claim" could take one of two meanings here: 1) a yet-to-be proven statement or 2) "The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." CLAIM, Black's Law Dictionary (11th ed. 2019). Dugger's pursuit of an unclean hands defense based on improper pay probably meets the first definition but is squarely rejected by the second.

(2011).

Looking at the whole of the DRA, the Court determines the term "legal claims" does not embrace an unclean hands defense to injunctive relief based on improper pay practices. First, the DRA's 400-word list of what constitutes a legal claim does not even gesture toward the possibility that a "legal claim" might include a "defense." (Doc. 22-1 at PageID# 352). While the Court is aware this is an open category ("shall include, but are not limited to"), the truth remains that the list of claims made arbitral all appear as swords, not shields. (*Id.*).

The section of the DRA applicable to improper pay practices sheds light onto the nature of the "claims" within the scope of the DRA:

> Legal claims shall include but are not limited to…any and all claims for wages, salary, bonuses, commissions, overtime pay, premium pay, vacation pay, severance, pay, benefits, contributions, or any other claims for compensation, including, without limitation, claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§201 et seq. ("FLSA") or any applicable state or local law comparable to the FLSA….

(Doc. 22-1 at PageID# 352)

Dugger's defense, although it is indeed based on improper pay practices, cannot be a "claim for wages, salary…or any other claim for compensation" because this Court cannot award him wages, salary or compensation. As explored more in depth below, remedies matter. Nor, for similar reasons, is Dugger here asserting a claim "under the Fair Labor Standards Act," a statute which provides for its own cause of action and its own remedies. *See* 29 U.S.C. §216.

Thus, the Court finds TQL is incorrect when it says "[a]lleged improper pay practices are not excluded in the Agreement. They are…specifically listed as an example of what is included." (Doc. 22 at PageID# 344). Based on its reading, the Court concludes "claims for wages" are plainly not the same as "improper pay practices" alleged for another purpose.

Moreover, the arbitration process set up by the DRA is incomprehensible if "legal claims" includes "equitable defenses to injunctive relief." Consider, for example, how it would contort the language of the arbitration process laid out in the DRA if "Legal Claim" could mean "equitable defense." Step 2 of the DRA reads: "If any Party ("Claimant") desires to file a Legal Claim against the other Party ("Respondent"), then the Claimant shall: (a) serve a notice on the Respondent stating Claimant's intent to file a Legal Claim through arbitration ("Arbitration Notice") …." (Doc. 22-1 at PageID# 353). As used in this section, a legal claim in no way resembles a defense. It makes no sense to serve a notice of a "defense" when a lawsuit is already underway and the specter of injunctive relief hangs over the proceedings.

Finally, accepting Plaintiff's theory puts the inclusive "Legal Claims" section of the DRA in direct conflict with section that lists exemptions. Section 1.A of the DRA subjects "legal claims" to mandatory arbitration. (*Id.* at PageID# 352). Section 1.B exempts from arbitration "claims for…. injunctive relief...relating in any way to the [non-compete]." (*Id.* at PageID# 353). This Court has already found that an unclean hands defense to injunctive relief is available, although far from established. Thus, if a defense to equitable relief is properly considered a legal claim, it also properly belongs to the

9

category of exemptions because it undoubtedly "relates to injunctive relief … relating in any way to the [non-compete]." (*Id.*)

Thus, under one scenario, an unclean hands defense to injunctive relief is unaddressed by the DRA. Under another, the claim—in this case, a defense to injunctive relief—is specifically exempted from arbitration because it relates to injunctive relief to enforce the non-compete. Under either scenario, the Court can find no cause to send Dugger's unclean hands defense to arbitration. Ultimately, the Court is not in doubt on the proper reading of the DRA. A reading of the whole DRA clearly demonstrates it does not subject unclean hands defenses to mandatory arbitration.

In other words, equitable defenses to injunctive relief are not exempted because they were not covered by the scope of the DRA in the first place. The Court now turns to some specific arguments made by TQL.

First, TQL makes an implied assumption that a "claim" is defined with regards to its factual subject matter only. While not explicitly argued, this would seem to be the logic that allows TQL to conclude that factual allegations about improper pay are arbitrable whether those allegations are interposed as a defense to equitable relief, asserted affirmatively by a litigant, or merely proclaimed as true in general. In particular, the Court finds this assumption of TQL erases the important role of remedies in defining a "claim," as courts generally understand that term. *See e.g., Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493, 497 (6th Cir. 2001); *United States v. Berkeley Heartlab,*

*Inc.*, 225 F. Supp. 3d 460, 464 (D.S.C. 2016).[4]

That point is particularly important here. As the Court has noted, damages for improper pay practices or FLSA violations are not before the Court. The Court sees no way, moreover, that a factual determination on a preliminary injunction would result in preclusive effects for a latter-in-time FLSA claim for back-pay and damages—the question of which may well be committed to an arbitrator. *See Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) ("Judge Martin's ruling has no res judicata effect because it does not constitute a final adjudication of the merits of an issue.") Dugger only wields the improper pay allegations as a shield to injunctive relief sought by the TQL. Understood in that context, the Court simply cannot agree that an equitable defense based on "improper pay practices" is an arbitral "claim" merely because causes of action based on similar facts are committed to arbitration.

As should be expected, much of TQL's argument highlights the strong presumption in favor of arbitration. For example, with support and quotations from *U.S.W. v. Mead Corp* and *AT&T v. Communication Workers*, TQL argues: "[I]n cases involving broad arbitration clauses—like the one here—the Supreme Court has found the presumption of arbitrability particularly applicable, and only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." (Doc. 22 at PageID# 342 (citing *U.S.W. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994) and *AT&T Tech., Inc. v.*

---

[4] The Court directs to these cases only because they discuss or acknowledge how available remedies at least in part shape what is properly considered a "claim."

11

*Communications Workers*, 475 U.S. 643, 648, (1986)) (internal citations and quotations omitted).

Issues abound with this argument as it applies to the facts here. The breadth of the arbitration clause is debatable. After all, the DRA exempts from arbitration a greatly important set of contract rights established in the non-compete. As the Court has noted, furthermore, if "legal claims" encompass "equitable defenses to injunctive relief," then those equitable defenses belong to the enumerated exemptions because they directly relate to injunctive relief to enforce the non-compete. In that case, there would be an exclusion for the particular "grievance." But, for reasons already stated, the Court does not find that the DRA covers equitable defenses like unclean hands in the first instance.

To be clear, the Court acknowledges the strong presumption in favor of arbitration. On the other hand, the Court does not believe this is a close case. For reasons stated, the DRA clearly does not draw "equitable defenses" within its definition of arbitral claims.

Beyond the cases that merely recite the presumption in favor of arbitration, TQL seeks indirect support from two cases. (Doc. 22 at PageID## 345-46). Both are about waiver—a concept invoked by TQL-cited authority but conspicuously not argued beyond those mere citations.

In any event, the cases provide no help for TQL here. *HCRI TRS Acquirer v. Iwer* involves a finding that a defendant had waived the right to plead an affirmative defense. 708 F. Supp. 2d 687, 692 (N.D. Ohio 2010). The Court does not doubt that such a waiver is possible. In *Iwer*, though, the defendant waived a surety defense by signing a contract

which stated in all-caps: "Guarantor waives all suretyship and other similar defenses." *Id*. *Reed v. Bove* is cited because it, in turn, recognizes an Ohio case where someone signed a contract with an "anti-waiver" clause, thus, as it were, waiving the waiver defense. *See* No. 2:17-CV-168, 2019 WL 3779866, at *4 (S.D. Ohio Aug. 12, 2019) (citing *Frank B. Thomas Trust v. Imperial 400 Nat., Inc.*, No. 14202, 1990 WL 34872, at *3 (Ohio Ct. App. Mar. 28, 1990). But here again, the waiver is specific to the defense and recited in the contract as a "waiver" by name. *See Frank B. Thomas Tr.*, 1990 WL 34872, at *2 (Ohio Ct. App. Mar. 28, 1990). These cases seem to collectively stand for the notion that waivers of defenses ought to be specific both as to the waiver itself and the defenses to which it applies.

In its attempted bridge from those cases to the present one, TQL states that "[h]ere, the Agreement does not state that Dugger is not allowed to seek a determination that TQL engaged in improper pay practices; it simply says he must do so through arbitration. It's a waiver of the right to seek judicial relief on the issue, not relief at all." (Doc. 22 at PageID#

That is a curious interpretation of the DRA. The DRA does invoke "waivers" but only to state that the employee waives class actions and a court litigant does not waive arbitration simply by filing in court. (*See* Doc 22-1 at PageID# 355, ¶¶11, 12). The DRA does not state that the parties waive any "defenses," let alone put names to those defenses.

Looking at the legal definition of waiver on its own terms, the Court finds no way to map the concept of waiver onto Dugger's behavior here. In a civil case, an Ohio court

13

has held that "[n]o man can be bound by a waiver of his rights, unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights, and intends to waive them, must plainly appear." *Prudential Ins. Co. of Am. v. Joyce Bldg. Realty Co.*, 65 N.E.2d 516, 520 (Ohio Ct. App. 1943), aff'd, 143 Ohio St. 564, 56 N.E.2d 168 (1944). Given that exacting criteria, it is unthinkable that Dugger would have "waived" a right to raise an affirmative defense by implication because he signed a DRA that covered "claims for wages" and the like. As stated, the DRA does not use the term "waiver" or single out any defenses.

The Court's conclusion is that the DRA does not cover Dugger's unclean hands defense, so that defense is not subject to mandatory arbitration. Nothing further is needed to resolve the motion. The Court will thus address other arguments only in brief.

### B. Waiver of arbitration

Albeit in dicta, the Court analyzes Defendants' argument that TQL waived its own right to arbitrate. "A party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion to such an extent that the opposing party incurs actual prejudice." *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012).

It is undisputed that TQL knew of Dugger's unclean hands defense to the TRO and, in reply, said nothing about an arbitration agreement. It is also true that TQL's motion to arbitrate came quick on the heels of the Court determining that TQL must produce discovery responses to requests aimed at the dirt alleged on its proverbial hands.

In that way, it is perhaps creditable that TQL has taken actions "completely inconsistent" with any reliance on an arbitration agreement. But these factors do not put TQL within the same category of litigants found to have "waived" their right to arbitrate by the Sixth Circuit.[5]

It is also worth nothing that this case is not postured as *Johnson Assocs.*, or any of waiver-of-arbitration cases. Here it is the Plaintiff, TQL, invoking arbitration after it has chosen both the forum and sought injunctive relief. None of TQL's affirmative relief is premised on improper pay issues. That only enters the picture upon Dugger's opposition to the TRO. For that reason, the Court is in no position to state that TQL has waived its ability to send claims for wages—properly understood as affirmative claims or counterclaims—to arbitration. Improper pay practice claims are not even before this Court, as already established. It would run off the tracks of the waiver-of-arbitration case law, therefore, to hold that TQL had waived the right to arbitrate a cause of action that is not even before the Court.

Defendants' argument, assuming *arguendo* that the unclean hands defense is within the DRA, is that TQL waived the right to arbitrate the *defense*. There is no authority cited to the Court on the question of whether it is proper for a plaintiff to litigate a claim for relief while submitting a defense to that same relief to arbitration—or whether

---

[5] In *Johnson Associates*, for example, the proponent of arbitration raised it three days before the discovery deadline. In *Manasher v. NECC Telecom*, a year of litigation went by, as had a motion for class certification, before defendant moved to compel arbitration. *See* 310 Fed.Appx. 804 (6th Cir.2009); *see also Gen. Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding waiver of arbitration rights where first asserted in a motion to vacate default judgment).

15

this type of plaintiff behavior should amount to an automatic waiver. For the Court, the idea of such an unnatural severance between a claim and a defense implicates basic fairness concerns. Its fairness concerns notwithstanding, the Court will not stake out new territory on a question it does not need to resolve. And here, the Court has already determined that the DRA does not cover Dugger's equitable, unclean hands defense.

### C. Contract Law and the Court's Equity Jurisprudence

Defendants would have this Court state an even broader principle: that "no contract can usurp the Court's authority and obligation to ensure that TQL has clean hands before it receives injunctive relief." (Doc. 28 at PageID# 397). In support, Plaintiff's cite Reid *Burton Const. Inc. v. Carpenters Dist. Council of S. Colorado*, wherein the Tenth Circuit stated that "it would be improper for the prospective parties of a lawsuit to attempt by contract to bind the exercise of a court's inherent judicial function." 535 F.2d 598, 604 (10th Cir. 1976). Plaintiff also cites to cases where courts disregarded contract language that had the parties reciting, for example, that certain behavior would constitute irreparable harm. (Doc. 22 at PageID# 398).

To the Court's mind, the separation between the parties' contractual rights and the Court's equitable powers is not as tidy as Defendants here advocate. For example, while parties cannot contract their way into a finding of irreparable harm, a contract provision may be "one piece of evidence in support of a finding of irreparable harm." *York Risk Servs. Grp., Inc. v. Couture*, 787 F. App'x 301, 308 (6th Cir. 2019). Similarly, it is unremarkable to conclude that contract language may help the Court determine what is appropriately considered "equitable" behavior or not. There are plenty examples of

courts finding that "equitable defenses" should indeed go to arbitration, albeit usually in the context of either a defense *to* arbitration or to the merits. *See Int'l Union of Operating Engineers, Loc. 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491, (1972) ("[W]e find that the parties did in fact agree to arbitrate the issue of laches here.").

All of which is to say that, assuming the DRA had clearly covered an unclean hands defense—or recited that certain behavior could not constitute "unclean hands"—the Court would undertake a careful analysis. It would not be as simple as holding "that a contract cannot dictate the Court's consideration of the equities." (Doc. 28 at PageID# 398).

## IV. CONCLUSION

Based upon the foregoing:

1. Defendant's motion to compel arbitration is **DENIED** (Doc. 22);

2. Defendant's motion to stay the case as to improper pay issues is **DENIED as MOOT.** (Doc. 22).

**IT IS SO ORDERED.**

Date: 2/22/2022

Timothy S. Black
United States District Judge