**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:21-cv-714 |
| Plaintiff, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| TRAFFIC TECH, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STAY (Doc. 32) AND ORDERING BRIEFING ON THE DISPOSITION OF THE TRO**

This civil case is before the Court on Plaintiff Total Quality Logistics' emergency motion to stay all proceedings pending appeal (Doc. 32) and Defendants' opposition (Doc. 33).

**I. BACKGROUND**

Plaintiff Total Quality Logistics, LLC ("TQL") filed this case to remedy a perceived breach of a Non-Competition agreement ("Non-Compete") and disclosure of trade secrets by its former employee, Defendant Nickolas Dugger. (Doc.1). TQL also named Dugger's new employer Traffic Tech, Inc. ("Traffic Tech") as a Defendant. (*Id.*). TQL moved for injunctive relief. (Doc. 4). The Court granted a Temporary Restraining Order ("TRO") forbidding Dugger from working with his clients at TQL while at Traffic Tech but not requiring him to terminate his employment. (Doc. 15). Because both sides had requested expedited discovery and briefing, the Court ordered that the TRO would

stay in place until the preliminary injunction was resolved. (*Id.* at 24).

In its Order granting the TRO, the Court also found that Dugger could assert an unclean hands defense to TQL's request of injunctive relief. (*Id.* at 22). However, Dugger had not yet adequately demonstrated TQL's unclean hands in opposition to the motion for a TRO. (*Id.* at 22-23). Dugger has continued to pursue an unclean hands defense to the preliminary injunction. According to Dugger, TQL's unclean hands stem from TQL having misclassified and underpaid Dugger. Dugger raised this defense in opposition to the TRO. (Doc. 7). In a reply brief on its motion for a TRO, TQL argued against the unclean hands defense but did not raise the issue of arbitrability. (Doc. 13).

After entering the TRO, the parties entered expedited discovery ahead of briefing on the preliminary injunction. (*See* Notation Order of December 16, 2021). Originally, the parties were to complete expedited discovery and submit one brief per party by January 28, 2022. (*Id.*).

They quickly reached an impasse. The Court resolved that discovery impasse by ordering that TQL had to respond to a limited amount of discovery requests seeking information about improper pay practices—in other words, TQL's allegedly unclean hands. (Doc. 21). Only after the Court's discovery Order did TQL move this Court to compel arbitration and argue that the unclean hands defense was subject to mandatory arbitration because it was based on improper pay practices. (Doc. 22). Meanwhile, because of further discovery issues, the timeline to full submission of the preliminary injunction briefing was pushed back to March 14, 2022. (*Id.*).

To be clear, TQL's motion to compel arbitration requested arbitration on one issue only: Dugger's 'unclean hands' allegations that TQL improperly paid him. (*Id.*). TQL's motion to compel arbitration requested a stay of discovery as to only that same issue. (*Id.*). Otherwise, TQL wanted to move forward with the preliminary injunction briefing. (*Id.*). The Court denied the motion to compel arbitration, finding an equitable defense to injunctive relief related to improper pay practices was not within the scope of the parties' dispute resolution agreement. (Doc. 30).

TQL has filed an appeal of the Order denying the motion to compel arbitration as to improper pay practices. (Doc. 31). TQL has also filed this emergency motion to stay the case pending appeal. (Doc. 32). Here, TQL *for the first time* requests the entire case be stayed—not just discovery as to improper pay practices. (Doc. 32 at PageID## 518-19). TQL requests expedited consideration from this Court. (*Id.*).

Defendants' opposition states Defendants would consent to the stay on the condition that the Court either state that the TRO will expire by March 14, 2022, the date by which the preliminary injunction briefing would be fully submitted, or that the Court retain limited jurisdiction to dissolve the TRO. (Doc. 33).

## II. LAW & ANALYSIS

"The Federal Arbitration Act, codified at 9 U.S.C. § 1 *et seq.*, provides a statutory right to an interlocutory appeal of an order denying a request to stay proceedings and compel arbitration." *Borror Prop. Mgmt., LLC v. Oro Karric N.*, LLC, No. 2:19-CV-04375, 2020 WL 3248354, at *1 (S.D. Ohio June 16, 2020) (Marbley, C.J.) (citing 9 U.S.C. § 16(a)(1)(A) ("An appeal may be taken from an order refusing a stay of any

3

action under section 3 of this title.")). "While the Sixth Circuit has not squarely addressed the issue, the majority of circuit courts, and district courts within this circuit, have held that an interlocutory appeal under 9 U.S.C. § 16 divests the lower court of jurisdiction over the matter, so long as the appeal is not frivolous." *Id*. (collecting cases). "The rationale behind this approach is that the underlying claims before the district court are not collateral to the issue presented on appeal, as the very purpose of the appeal is to determine whether the case should proceed on the merits." *Id*.

TQL argues that the Court is divested of jurisdiction pending the appeal of the Court's denial of TQL's motion to compel arbitration. Alternatively, TQL argues the Court should enter a discretionary stay.

The Court firsts addresses the threshold issue of jurisdiction. Per above, an appeal of a denial of arbitrability "divests" this Court of jurisdiction "over the matter." The scope of any given jurisdictional divestiture, though, is an important question and depends on what is up for appeal. The Court in the TQL-cited case *Bradford-Scott v. Physician Computer Network* takes care to elaborate on this point:

> The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982). *See also, e.g., Berman v. United States*, 302 U.S. 211, 214, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937); *Hovey v. McDonald*, 109 U.S. 150, 157, 3 S.Ct. 136, 140, 27 L.Ed. 888 (1883). The qualification "involved in the appeal" is essential— it is why the district court may award costs and attorneys' fees after the losing side has filed an appeal on the merits, why the court may conduct proceedings looking toward permanent injunctive relief while an appeal about the grant or denial of a preliminary injunction is pending. Whether the case should be litigated in the district court is not an issue collateral to the question presented by an appeal under § 16(a)(1)(A), however; it is the mirror image of the question presented on appeal.

4

> Continuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals.

128 F.3d 504, 505 (7th Cir. 1997)

While *Bradford-Scott* is a Seventh Circuit case, it is widely cited in Sixth Circuit. *See, e.g.*, *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-333, 2014 WL 1818907, at *4 (S.D. Ohio May 7, 2014) ("The resolution of the Committee's claims against Navistar is necessarily an "aspect[ ] of the case involved in the appeal" of arbitrability.") (quoting *Bradford–Scott* 128 F.3d at 506). The Court finds that the court in *Bradford-Scott* makes several points that are relevant here.

First, only certain "aspects of the case" are likely to be involved in the appeal here. *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). TQL moved to compel arbitration and stay discovery on "improper pay practices" only. In briefing ahead of the Order that TQL now appeals, TQL specifically requested that the Court move forward on the preliminary injunction. Presumably then, the Court of Appeals will consider whether improper pay practices are arbitrable under the dispute resolution agreement and whether the case ought to have been stayed as to those issues.[1]

---

[1] It is important to keep two things in mind. First, "in general, [i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." *McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002) (citing *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir.1991). Second, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This case calls on the Court to analyze the divestiture of its own jurisdiction based on an appeal. The Court finds that it is only reasonable to construe the "aspects of the case" involved in the appeal as those issues presented to the Court and the Court's findings as represented in its Order denying the motion to compel arbitration.

An interlocutory appeal on arbitrability, per *Bradford-Scott*, "divests the district court of its control over those aspects of the case involved in the appeal." 128 F.3d 504, 505. Thus, applying the general rule that what is up on appeal is what was before the lower court, this Court is divested of its control over the arbitrability of improper pay practices. Accordingly, the Court will stay proceedings as to that "aspect of the case."

But the Court retains jurisdiction as to other issues. And *Bradford-Scott* helpfully illuminates this point as well, writing: "[t]he qualification 'involved in the appeal' is essential—it is why … the court may conduct proceedings looking toward permanent injunctive relief while an appeal about the grant or denial of a preliminary injunction is pending." 128 F.3d 504, 505. In this case, a preliminary injunction is indeed pending, notwithstanding TQL's new-arriving request to stay the whole case. And a TRO, necessary only to preserve the status quo until the preliminary injunction can be heard, is also in place.

If this Court would have the jurisdiction to forge on with a final decision on the merits while a preliminary injunction is on appeal, this Court sees no reason why it does not retain jurisdiction over its own TRO, as is relevant here, while the issue of arbitrability of an equitable defense to the preliminary injunction is on appeal.[2] As noted, TQL did not even raise the arbitrability of improper pay practices until *after* the TRO was handed down, even though it had a chance to reply to the unclean hands defense.

---

[2] The Order granting the TRO found that Dugger failed to establish unclean hands via TQL's improper pay practices. The Court acknowledges that any further proceedings regarding the TRO could not involve "improper pay practices."

Finally, *Bradford-Scott,* along with many other cases from this district, provide context on the rationale for the divestiture of jurisdiction. "Continuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." *See also Rogers v. SWEPI LP*, No. 2:16-CV-999, 2018 WL 1663294, at *2 (S.D. Ohio Apr. 6, 2018) (quoting the same language). Of course, in this case, throughout briefing on the motion to compel arbitration and until the present motion, both parties were advocating for the "continuation of proceedings in the district court" to some degree. It is therefore at least debatable whether the resources-saving concerns are implicated.

On the other hand, the Court is quite certain that "inconsistent handling" is not a risk here. Because orders granting injunctive relief are preliminary remedies, they have "no res judicata effect." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). So if this Court found Dugger could not prove unclean hands (or vice versa) because of improper pay practices, it would not stop an arbitrator from finding that Dugger had been harmed by TQL's improper pay practices (or that he had not). The Court sees no prejudice resulting from "inconsistent handling" so long as this case remains in a preliminary posture. And, of course, in this case, there is a further stopgap for inconsistent handling: the Court will not consider improper pay practices pending appeal.

To summarize, TQL's appeal has divested the Court of jurisdiction over the issue of the arbitrability of improper pay practices. TQL's appeal has not divested the Court of

jurisdiction over issues in the case not involved in the appeal. The Court now turns to Defendants' opposition and the question of the TRO.

In what may be termed a "conditional opposition," Defendants have stated they will agree to a stay of the case so long as the Court orders that the TRO will dissolve or expire by March 14, 2022—the date briefs are currently due on the preliminary injunction. (Doc. 33 at PageID# 643). As an alternative, Defendants argue the Court may retain jurisdiction to decide whether to dissolve the TRO.[3]

The Court will adopt the latter approach. Per above, the Court has already determined it has adequate jurisdiction. Moving forward, the Court will construe Defendants' opposition as both a request to dissolve the TRO and as a newly-raised argument that the TRO will itself expire after Defendants' alleged consent to the TRO is withdrawn on March 14, 2022. Because this is a new argument, TQL will have the chance to respond to it, per below.

In summary, by virtue of TQL's appeal under 9 U.S.C. §16, this Court no longer has jurisdiction over the question of arbitrability of improper pay practices. Based on the briefing of the parties, and as is within this Court's discretion, the Court will stay all other aspects of the case except for issues related to the dissolution, expiration, or extension of the TRO. Accordingly, no further discovery shall take place until further notice. The

---

[3] It seems relatively—but not perfectly—clear that Defendants' consent to a stay in the event this Court only finds, as in fact is the case, that it has jurisdiction over the TRO but leaves the question of what to do with the TRO for later. If there is no consent, the Court enters a stay on its own accord.

Court directs TQL to submit briefing responsive to Defendants' request to dissolve the TRO and/or to the argument that the TRO will expire on its own terms.[4]

Except for granting the stay as outlined above, the Court will not address TQL's request for a discretionary stay.

### III.  CONCLUSION

Based upon the foregoing, the Court orders the following:

1. TQL's emergency motion for a stay pending appeal (Doc. 32) is **GRANTED** in part, as follows:

    a. TQL's motion is **GRANTED** insofar as this Court has been divested of jurisdiction on the issue of the arbitrability of improper pay issues and further proceedings on that issue are **STAYED** pending appeal.

2. Based on briefing from the parties, and as is within this Court's discretion, the remainder of the case is also **STAYED**, **except**:

    a. The Court will consider whether to extend or dissolve the TRO, pending the appeal, or whether the TRO will expire after Defendants' consent is withdrawn.

3. TQL shall submit briefing on the TRO issues by March 4, 2022.

**IT IS SO ORDERED.**

Date:   2/25/2022

*Timothy S. Black*
Timothy S. Black
United States District Judge

---

[4] TQL SHALL NOT use this as an opportunity to shadow-brief its preliminary injunction motion, and the Court will ignore any arguments or evidence suggesting, for example, that the Court should keep the TRO in place because of evidence discovered after the TRO was entered. TQL is to address only whether the TRO should stay in place on the terms upon which it was entered.

9