## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:21-cv-714 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| TRAFFIC TECH, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER SETTING INJUNCTIVE ORDER (Doc. 15)
## TO EXPIRE ON SEPTEMBER 24, 2022

This civil action is before the Court on the question of whether the existing temporary restraining order should stay in place pending Plaintiff's appeal of an order denying a motion to compel arbitration. The Court construed Defendants' partial opposition (Doc. 36) to a motion to stay pending appeal as a request to dissolve the TRO and/or an argument that the TRO expires on its own. Plaintiff has also supplied a brief on these questions. (Doc. 39).

## I.    BACKGROUND

Plaintiff Total Quality Logistics, LLC ("TQL") is an Ohio limited liability company with its principal place of business in Clermont County, Ohio. (Doc. 3 at ¶2). TQL provides freight brokerage and third-party logistics services to customers across the continental United States. (*Id.*). TQL filed this case against its former employee, Nickolas Dugger ("Dugger"), and his new employer, Traffic Tech Inc. ("Traffic Tech"). (*Id.* at ¶3).

While an employee of TQL, Dugger signed TQL's Confidentiality Agreement and Restrictive Covenant ("non-compete"). (*See* Doc. 3-1). As part of that agreement, for one year after his employment with TQL ended, Dugger agreed, *inter alia*, to neither work for a competitor nor solicit clients of TQL. (*Id.*). Dugger also signed a dispute resolution and arbitration agreement ("DRA"). (Doc. 22-1). In the DRA, both Dugger and TQL agreed to let the other submit "any and all legal claims" to arbitration. (*Id.* at PageID# 352).

In September 2020, Dugger left TQL and joined Traffic Tech. (*See* Dugger Declaration, Doc. 7-1). His largest client at TQL, United Pipe, became his largest client at Traffic Tech. (*Id.* at ¶21). After discovering Dugger's employment with Traffic Tech, TQL moved for—by a single motion—a temporary restraining order ("TRO") and a preliminary injunction in state court. (Doc. 4). Defendants removed the case here. (Doc. 1).

In TQL's briefing in support of a TRO and a preliminary injunction, TQL argued Dugger had violated his reasonable non-compete, and had, or inevitably would, disclose trade secrets. (Docs. 4 and 13). Dugger made an "unclean hands" allegation the center of his defense to the injunctive relief sought by TQL. (Doc. 7 at 6). With regards to that unclean hands defense, Dugger specifically contended that TQL had misclassified him and committed improper pay practices in violation of the Fair Labor Standards Act ("FLSA"). (*Id.*). Dugger argued that, without clean hands of its own, TQL could not avail itself of the Court's equitable powers to enter injunctive relief. (*Id.*).

2

In its initial response to the unclean hands defense raised by Dugger, TQL made two contentions *contra* —neither of which involved arbitrability. First, TQL argued state law did not permit an unclean hands defense where the underlying claim could be asserted in its own case for damages. (Doc. 13 at PageID# 245). Second, TQL argued that Dugger simply had not established the necessary elements of the unclean hands defense. (*Id.*).

After finding TQL had shown entitlement to injunctive relief on its breach of contract claim, the Court entered a limited TRO, which remains in place. (Doc. 15). The TRO restricts Dugger from working with United Pipe and other TQL customers. (*Id.*). But the TRO does not enjoin him from his employment with Traffic Tech generally. (*Id.* at 23). On the other hand, the Court found that TQL had not demonstrated a likelihood of success on its trade secret and tortious interference claims. (*Id.*).

The Court also made preliminary determinations on Dugger's asserted unclean hands defense to injunctive relief. (*Id.* at 20). Because TQL sought this Court's powers under Rule 65 of the Federal Rules of Civil Procedure, TQL could not summarily foreclose an "unclean hands" defense to that equitable relief. (*Id.* at 22 (citing *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)). However, the Court found that Dugger had failed to establish TQL's unclean hands based on the rigorous standard for that equitable defense. (Doc. 15 at 22). Thus, at the TRO stage, the unclean hands defense failed, although it remained a viable defense to further, or continuing, injunctive relief.

3

The Court calls attention to two more features of the TRO the Court entered. First, the Court noted that "Plaintiff's motion clearly seeks both a TRO and a preliminary injunction. (Doc. 4). However, both parties have requested expedited discovery before briefing a preliminary injunction. (Doc. 4 at PageID# 144; Doc. 8, PageID# 190, n.1). For that reason, the Court here will only decide the question of a TRO." (Doc. 15 at 1, n.1). Second, to accommodate the parties' interest in conducting discovery, the Court stated:

> Because this Order was issued on notice with full participation of all parties, and because the parties have requested discovery of unknown duration before briefing the preliminary injunction, absent an alternative agreement reached by the parties, this Order will remain in place until the motion for preliminary injunction is resolved. *See, e.g.*, *Church Mut. Ins. Co. v. Smith*, No. 3:14-CV-749-JHM, 2015 WL 3863164, at *3 (W.D. Ky. June 22, 2015).

(Doc. 15 at 24) (citation included in original).

After the Court entered the TRO, the parties indeed conducted discovery. They came to several impasses, including, as is relevant here, a dispute related to discovery requests tailored toward TQL's unclean hands. (*See* Doc. 21). By Order dated January 21, 2022, the Court narrowed those requests but allowed Dugger to propound at least some discovery related to TQL's potentially unclean hands. (*Id.*).

TQL also filed a motion to compel arbitration on "improper pay practices"—in other words, the core question pertinent to its allegedly unclean hands. (Doc. 22). The Court denied the motion to compel, finding that a defense to equitable relief that was factually premised on improper pay practices was not within the scope of the DRA. (Doc. 30). TQL then filed an appeal and moved for a stay pending the appeal. (Doc. 32). In

4

that motion, TQL argued the appeal divested this Court of jurisdiction. (*Id.*). In partial

opposition to the motion to stay pending appeal, Defendants argued this Court could

retain jurisdiction to determine whether to maintain, modify or dissolve the TRO. (Doc.

36). The Court determined that it was divested of jurisdiction over improper pay

practices but retained jurisdiction over the TRO. (Doc. 37 at 7). Accordingly, the Court

asked TQL to brief the questions raised by Defendants: whether the TRO expires on its

own without Defendants' consent to extend it, and, if it does not, whether the Court

should exercise its equitable powers to dissolve or modify the TRO.

## II.  ANALYSIS

### A.  The Extended Duration of the TRO without Defendants' Consent

Defendants argue the TRO should simply terminate because it is past its statutory

life, and they do not consent to any extensions. (Doc. 36 at 13). Defendants make a point

of revoking any consent they have given. (*Id.* at 11).

Federal Rule of Civil Procedure 65(b)(2) states:

> Every temporary restraining order issued <u>without notice</u> must state the date and
> hour it was issued; describe the injury and state why it is irreparable; state why the
> order was issued without notice; and be promptly filed in the clerk's office and
> entered in the record. The order expires at the time after entry--not to exceed 14
> days--that the court sets, unless before that time the court, for good cause, extends
> it for a like period or the adverse party consents to a longer extension. The reasons
> for an extension must be entered in the record.

(emphasis added)

However, as TQL points out, it is well-established that the durational limits imposed by Rule 65(b)(2) do not strictly apply to a TRO issued <u>on notice</u> of all parties. For example, the court in *Church v. Mutual Insurance Co v. Smith* stated:

> Preliminary injunctions may be issued only on notice to the adverse parties. Fed.R.Civ.P. 65(a)(1). As both parties had notice in November, and as nothing has convinced this Court that the calculus behind Judge Heybum's November findings have been altered, the Court feels that the TRO currently in place is, effectively, a preliminary injunction and deems it unnecessary to formally convert it to a preliminary injunction.

2015 WL 3863164, at *3 (W.D. Ky. June 22, 2015)

Moreover, the Sixth Circuit has stood behind the proposition that a temporary restraining may be regarded as "tantamount to a preliminary injunction." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). The *Overstreet* court summarized the factors that justified that conclusion:

> This Court finds that Plaintiff Appellant's Motion for a Temporary Injunction is tantamount to a motion for a preliminary injunction. Although the district court treated the motion as one for a temporary restraining order, both parties have treated the motion, and the district court's ruling thereon, as a motion for a preliminary injunction. Indeed, in their respective pleadings, the parties set forth, and base their arguments upon, the elements that must be shown for a court to grant a preliminary injunction. Furthermore, the district court treated Plaintiff Appellant's Motion for Temporary Injunction Pending Appeal, styled in essentially the same manner as the original motion, as a motion for a preliminary injunction pending appeal.

*Id.*

Yes, the *Overstreet* court had a different question before it: whether the order entered—the one that was tantamount to a preliminary injunction—was appealable. *Id.* Still, *Overstreet* suggests that a TRO may be considered a preliminary injunction if

6

entered on notice, the parties have treated it like a preliminary injunction, and the party advocating for the injunctive relief has met the applicable standard for a preliminary injunction. Other courts have adopted similar reasoning. *See e.g., Sampson v. Murray*, 415 U.S. 61, 86 (1974) ("a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions.").

Here, TQL styled its motion as one for "a temporary restraining order and preliminary injunction" (Doc. 4.) and much of the motion specifically speaks to the standards for an "injunction." (*Id.* at 15). Defendants had notice. They also had an opportunity to submit briefing and declarations. (Docs. 7, 8, 9, 10, and 11). No more is legally required before the Court's disposition of a preliminary injunction.[1] The Court finds the TRO currently in place indeed "conforms to the standards applicable to preliminary injunctions." *Sampson*, 415 U.S. at 86.

Additionally, the TRO itself included two signals that it had the hallmarks of a preliminary injunction. First, the Court noted that it entered a "TRO," as opposed to a preliminary injunction, only because the parties had requested discovery and another

---

[1] The parties did not undertake a formal hearing. But a hearing is not required ahead of a preliminary injunction order when the material facts are not in dispute. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007). In this case, Dugger has admitted that he took employment with a competitor and accepted the business of former clients. The parties do not dispute having signed the non-compete or what it says. Thus, the Court found it was unnecessary to hold a hearing. Before resolving the motion for a TRO and preliminary injunction, the Court indicated it would order a hearing only if it thought one was necessary. (*See* Notation Order of 11/19/21).

chance to brief the question of injunctive relief. (Doc. 15 at 1, n.1). Second, in its conclusion, the Court noted the TRO would stay in place until the preliminary injunction was resolved because it was entered on notice with full participation and because the parties had requested discovery of unknown duration. (*Id.* at 24). In support of this sentiment, the Court cited *Church*—the case finding that a TRO entered on notice could be continued beyond the Rule 65 limits without formal conversion to a preliminary injunction. *See* 2015 WL 3863164, at *3 (W.D. Ky. June 22, 2015).

Furthermore, the parties' proposed schedules for discovery and briefing of the preliminary injunction ran far beyond the Rule 65(b)(2) duration for a TRO. (*See e.g.*, Notation Order of 12/16/2021). In other words, the parties themselves have not regarded the TRO by the terms of Rule 65(b)(2). Instead, the TRO has acted, by practical implication, as an injunctive bridge until the parties could complete discovery and briefing on the question of further injunctive relief.

For these reasons, like the court in *Church*, this Court may continue the TRO even without Defendants' consent. 2015 WL 3863164, at *3. For reasons stated in *Overstreet*, moreover, the Court regards the existing injunctive relief as "tantamount" to a preliminary injunction. 305 F.3d at 572.[2]

Defendants' consent is not irrelevant to the analysis; it is just not dispositive. By agreeing to discovery and a briefing schedule that extended beyond the Rule 65(b)(2)

---

[2] Accordingly, the injunctive order currently in place is also appealable. *See Overstreet*, 305 F.3d at 572.

limits, Defendants implicitly consented to an extension of the TRO. Defendants are free to revoke that consent. If the initial TRO was entered without notice, participation, or other safeguards, perhaps revoking consent would dissolve the TRO. But that is not the case here. In this case, even with any consent revoked, the Court may—and hereby does—deem the TRO "tantamount to a preliminary injunction." *Overstreet*, 305 F.3d 566, 572 (6th Cir. 2002).

Defendants argue *Hudson v. Barr* compels the dissolution of the TRO. 3 F.3d 970, 975 (6th Cir. 1993). The Court disagrees, although it finds an analysis of that case instructive. In *Hudson*, the district court entered a TRO after a "brief hearing." *Id.* at 971. The parties agreed the TRO would remain in place until further order of the court. *Id.* at 971-972. But, just like the present case, several intervening factors delayed the preliminary injunction hearing. *Id.* at 972. The defendant revoked consent, by implication, to further extensions. *Id.* at 973. The Sixth Circuit dissolved the TRO and ordered the district court to conduct a preliminary injunction hearing without further delay. *Id.* at 975-76. In reaching that conclusion, the Sixth Circuit approvingly quoted *Granny Goose Foods, Inc. v. Teamsters*, as follows: "Where a temporary restraining order has been continued beyond the time limits permitted under Rule 65(b), and where the required findings of fact and conclusions of law have not been set forth, the order is invalid." *Id.* (quoting 415 U.S. 423, 443 (1974)).

Here, in opposing a motion that explicitly asked for both a temporary restraining order and a preliminary injunction, Defendants presented evidence and made legal

9

arguments to the Court. This would seem to be more than the "brief hearing" the parties received in *Hudson*, although it is unclear exactly what happened in that case.   In this case, moreover, the Court did make findings of fact (*i.e.*, Dugger has probably violated the reasonable terms of his non-compete but no evidence shows he had disclosed trade secrets) and conclusions of law (*i.e.*, Dugger was free to pursue an unclean hands defense to injunctive relief).[3]   These differences illuminate why the Court here may keep the injunctive relief in place for now.

Defendants also cite *Granny Goose v. Teamsters* for the proposition that the Rule 65(b) "limitations exist even when 'notice is given and a hearing held.'" (Doc. 36 at 14 (citing 415 U.S. at 443)).  A longer quote from the same section of *Granny Goose* would read: "The fact that notice is given and a hearing held cannot serve to extend <u>indefinitely</u> beyond the period limited by (Rule 65(b)) the time during which a temporary restraining order remains effective." 415 U.S. at 443 (emphasis added).  Defendants exclude context suggesting the *Granny Goose* court would permit non-consensual extensions to a TRO entered on notice and with a hearing. 415 U.S. at 443.  *Granny Goose* only states it would not allow a TRO of that nature to remain in place "indefinitely." *Id.*  The Court will address the proper duration of the existing injunctive relief below.[4]

---

[3] Of course, these findings were necessarily "preliminary," not final. *See Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 115 F. App'x 806, 811 (6th Cir. 2004).

[4] The remaining cases cited by and arguments made by Defendants are not addressed to a situation where the TRO was entered on notice and with full participation of the parties. (Doc. 36 at 11-13).  For that reason, they are unpersuasive.

To summarize, the Court determines that Defendants implicitly consented to an extension of the TRO by requesting discovery of uncertain duration. Defendants have now revoked that consent. However, for reasons explored at length above, the Court considers the injunctive relief now in place as tantamount to a preliminary injunction. Thus, the injunctive order will not disappear simply because Defendants no longer consent to it.

### B. Whether to Maintain, Modify or Dissolve the Injunctive Relief

The Court has made clear that it may maintain the injunctive order entered in this case beyond the period established by Rule 65(b)(2). The next question is whether it should modify, dissolve or set limits on it.

On the questions at hand, the Sixth Circuit has said:

> The power to modify or dissolve injunctions springs from the court's authority to relieve inequities that arise after the original order. Where significant changes in the law or circumstances threaten to convert a previously proper injunction into an instrument of wrong, the law recognizes that judicial intervention may be necessary to prevent inequities. However, such judicial intervention is guarded carefully: To obtain modification or dissolution of an injunction, a movant must demonstrate significant "changes in fact, law, or circumstance since the previous ruling.

*Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) (internal quotations and citations omitted).

The Court regards this case to have undergone "significant changes…in circumstances." *Id.* As discussed, the parties had jointly charted a course that would allow them to complete discovery and then brief the question of a preliminary injunction with the benefit of that discovery. Because of TQL's appeal, the Court now lacks

jurisdiction to hear one part of the preliminary injunction analysis—whether TQL has committed improper pay practices and therefore has unclean hands. Without jurisdiction to consider that question, the Court, in turn, cannot consider Dugger's defense to injunctive relief. The appeal will remain pending for an unknown amount of time.

These circumstances "require the Court to consider equitable principles in balancing the parties' competing interests." *Momentive Specialty Chemicals, Inc. v. Alexander*, No. 2:13-CV-275, 2013 WL 12130291, at *5 (S.D. Ohio May 30, 2013). There are points for and against each side.

On the one hand, the existing injunctive relief is narrow. Dugger does not have to step down. Instead, the Court found that Dugger "shall immediately cease soliciting, or accepting the business of, customers or former customers of TQL in violation of the [non-compete]" and that "Dugger and Defendant Traffic Tech shall immediately cease to provide its services to United Pipe until further notice." (Doc. 15 at 24).

This conclusion did not come out of nowhere. It was supported by a thorough analysis of the non-compete and the harm faced by each party. (Doc. 15). The Court specifically found that the non-compete's prohibitions on Dugger's post-employment solicitations of TQL clients were reasonable. Nothing has changed this Court's view that the non-compete—narrowed appropriately and enforced against Dugger's specific conduct of client solicitation—is likely to hold up on the merits.

But there are also concerns on the TQL side of things. It is a fair inference that TQL interjected the arbitrability issue only to stave off responding to discovery about its

pay practices. TQL did not raise arbitrability in its initial response to Dugger's unclean hands argument. It only moved to commit improper pay practices to arbitration after it had secured the TRO—and only after the Court ordered TQL to respond to discovery aimed at its allegedly unclean hands. It seems reasonable to conclude that TQL is trying to maintain injunctive relief and avoid dealing with a possible defense to it.

Most importantly, TQL's appeal of the Court's order to deny arbitration on improper pay practices has created uncertainty. Because of the appeal, Dugger's unclean hands argument is tied behind his back. And the Court does not take seriously the idea, proposed by TQL, that it should hear arguments on further injunctive relief without considering Dugger's equitable defense to it. (*See*, *e.g.*, Doc. 39 at 6). On its own accord, the Court is skeptical of leaving injunctive relief in place for a time without limitation, even if the injunctive relief is narrow.

Balancing these interests, the Court reaches the following resolution. The Court will set its existing injunctive order (Doc. 15) to expire no later than September 24, 2022. That date would mark the conclusion of the non-compete's one-year duration, absent tolling. And as to tolling, the Court observes, on its own, that the non-compete contains a toll provision, setting the clock to start running from the date a preliminary injunction is entered against a violator of the non-compete. (Doc. 3-1 at PageID# 140). But the toll provision in the non-compete does not define or dictate the Court's equity powers. The Court has authority to modify its injunctive relief to "prevent inequities." *Gooch*, 672 F.3d at 414. Exercising that authority, the Court will not permit TQL to drag the

13

injunctive order beyond the temporal scope of its non-compete, violation or otherwise, because it is pursuing an appeal on an argument it raised after the TRO had been entered. Absent a subsequent order, the injunctive order currently in place will expire on its own no later than September 24, 2022.

The Court should be clear. If the Court may once again exercise jurisdiction over improper pay practices at any time prior to September 24, 2022, it will consider the question of injunctive relief as quickly as possible. The question of exactly how quickly will depend on the parties' desire to conduct or forego discovery.

### III. CONCLUSION

For these reasons, the Court hereby orders:

1. The injunctive order (Doc. 15) currently in place is "tantamount to a preliminary injunction" and will remain in place. *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002). Accordingly, Defendants may appeal the injunctive order. *See* 28 U.S.C. §1292(a)(1).

2. Absent a subsequent order, the injunctive order now in place (Doc. 15) **WILL EXPIRE** on September 24, 2022.

**IT IS SO ORDERED**.

Date: <u>4/14/2022</u>                          <u>    *s/Timothy S. Black*       </u>
                                                          Timothy S. Black
                                                          United States District Judge